IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL-CIO, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 09-CV-00091-DGK |
| v. | ) ) | |
| KANSAS CITY SOUTHERN RAILWAY COMPANY, | ) ) ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Defendant Kansas City Southern Railway Company's ("KCSR") Motion to Dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 9). The Court has reviewed this Motion in conjunction with Plaintiff Sheet Metal Workers International Association, AFL-CIO's ("SMWIA") Response and KCSR's Reply (Docs. 16, 18). For the reasons discussed herein, this Motion is hereby GRANTED.

**Background**

The Railway Labor Act ("RLA"), passed in 1926, represents one of the first major laws regulating organized labor in the United States. 45 U.S.C. §§ 151 *et seq.* Plaintiff, a national union of railroad employees including sheet metal workers, filed this action on April 9, 2009 (Doc. 1). Plaintiff represents Defendant's sheet metal workers as the collective bargaining representative pursuant to 45 U.S.C. § 151 Sixth.[1] Defendant is a rail carrier covered under the RLA which is headquartered in Kansas City, Missouri, operating in several midwestern and

---

[1] The codified sections of the RLA do not use formal subsections, but rather paragraphs called First, Seventh, etc.

1

southern states and in Mexico. The Complaint alleges four causes of action under the RLA. In Count 1, Plaintiff alleges that Defendant violated 45 U.S.C. 152 Seventh by altering the rules and working conditions in contravention of their Collective Bargaining Agreement ("CBA") by refusing to participate in a "time check."[2] Count 2 alleges that Defendant was violated section 152 Seventh by assigning sheet metal work to other employees in violation of the CBA. Count 3 alleges that Defendant has violated section 152 First, which requires it to "exert reasonable effort[s] to maintain agreements" with the union. The Supreme Court has equated this requirement to the duty to bargain in good faith under the National Labor Relations Act. *Chicago and N. W. Transp. Co. v. United Transp. Union,* 4-2 U.S. 570, 574-75 (1971). Plaintiff asserts that Defendant's refusal to perform a time check constitutes a breach of this duty of good faith. Count 4 alleges that Defendant's assignment of sheet metal work to other employees constitutes a breach of section 152 First.

**Standard of Review**

The crucial question for the Court to decide in ruling on this motion is whether the dispute between the parties is major or minor. "Minor" disputes under the RLA are subject to mandatory arbitration under 45 U.S.C. § 153 First. *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 303-04 (1989) ("*Conrail*"). A minor dispute under the RLA is one growing "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). The National Railroad Adjustment Board has exclusive jurisdiction over minor disputes, and district courts thus do not have subject matter jurisdiction to hear such cases initially. While this is a broad mandate for arbitration, defendants do not get to unilaterally impose arbitration by making

---

[2] A time check is a union audit designed to determine if work is being assigned and performed in compliance with the CBA.

groundless claims that the dispute is based on interpretation. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Conrail*, 491 U.S. at 307. Perhaps the most concise way to describe this dichotomy is to say that "major disputes seek to create contractual rights, minor disputes to enforce them." *Id.* at 302. The Court must therefore determine (1) if Defendant claims a contractual right to take the disputed actions and (2) whether Defendant's positions are "arguably justified" or "frivolous and obviously insubstantial." If the Court finds the former, this case must be dismissed for a lack of subject matter jurisdiction and referred to the National Railroad Adjustment Board for mandatory and binding arbitration. If it is the latter, the case will continue in this forum.

While the Court is ultimately making a determination about the plausibility of Defendant's position, it is important to remember that the question of whether Defendant's position is arguably justified is not a decision on the merits. Rather, "[i]t is not [courts'] function to interpret or construe the language…[t]he fact that…contract interpretation may be questionable-and may be wrong-does not make it frivolous." *Sheet Metal Workers' Int'l Ass'n v. Burlington N. R.R. Co.,* 893 F.2d 199, 205 (8th Cir. 1990). In other words, as this is not a decision on the merits, the Court may actively disagree with Defendant and still hold that this case is subject to mandatory arbitration if it finds that at least one of Defendant's positions is arguably justified.

## Discussion

As a threshold matter, the Court finds that Defendant does claim a contractual right to take the disputed actions. With regards to the right to assign sheet metal work to other

3

employees, Defendant first contends "that the union lacks any exclusive right to the work in question" and, in the alternative, that the parties' 1991 agreement allows it to assign work to other crafts under what is called the "Incidental Work Rule" (Doc. 10 at 6). Regarding its refusal to consent to a time check, Defendant asserts that the CBA allows for assignment-specific time checks, rather than broad time checks of types of work or locales. The remaining question is whether Defendant's positions on these issues are arguably justified or frivolous.

**A. Defendant's Refusal of Plaintiff's Request for a Time Check is Arguably Justified**

On September 11, 2007, Plaintiff submitted a formal request to Defendant to perform a time study at Defendant's locations in Shreveport, Louisiana and Kansas City, Missouri (Doc. 10-8). The purpose of this request was to complete a study of "[a]ll work contractually awarded, normally and historically performed by Sheet Metal Workers." *Id.* Defendant relies on the Incidental Work Rule, found in Article V of the 1972 National Agreement (Doc. 10-3). Article V states such a time check is appropriate when "there is a question raised as to whether or not the incidental work comprises a 'preponderant part' of *a work assignment*…" *Id.* (emphasis added). Defendant argues that this provision makes clear that it has not agreed to perform general time checks on demand, but rather time checks with regard to specific assignments when there is a dispute about the Incidental Work Rule. Plaintiff relies on Rule 28(b) of the parties' local Schedule Agreement (Doc. 10-2). This rule reads, in its entirety, as follows:

> "At points where there is not sufficient work to justify employing a mechanic of each craft, the mechanic or mechanics employed at such points will so far as they are capable of doing so, perform the work of any craft not having a mechanic employed at that point. Any dispute as to whether or not there is sufficient work to justify employing a mechanic of each craft, and any dispute over the designation of the craft to perform the available work shall be handled as follows: At the request of the General Chairman of any craft the parties *will undertake a joint check of the work done at the point.* If the dispute is not resolved by agreement it shall be handled as hereinafter provided and pending the disposition of the dispute the carrier may proceed with or continue its designation."

4

(Doc. 10-2 at 5) (emphasis added). The issue between the different provisions propounded by the parties as governing time checks is whether and when a time check can be applied generally to a location rather than to audit the propriety of a particular assignment under the Incidental Work Rule. The Court finds that if the applicable rule is Article V as Defendant suggests, Defendant's position is clearly at least arguable, as the plain language of Article V suggests that time checks are meant to apply to disputes about particular assignments, rather than entire shops or entire crafts.

Defendant relies on Rule 28(b), which applies when there is a "dispute as to whether or not there is sufficient work to justify employing a mechanic of each craft" to argue for a general time check of sheet metal work in Shreveport. Defendant is not currently employing sheet metal workers in Shreveport, so Plaintiff speculates that this work has been wrongfully given to other employees and requests a time check to investigate this theory. Defendant argues that the reason no sheet metal workers are currently employed in Shreveport is due to the "normal attrition" and not its decision that there is not sufficient work to justify their employ. Rather, Defendant contends that it is in the process of hiring sheet metal workers who will be employed at both the disputed locations. This suggests that there is no dispute over whether there is sheet metal work in Shreveport; both parties agree that there is work available. The Court cannot decide the factual question of whether the recent reduction in workers is due to normal attrition, nor can it presume that Defendant's contention that it will soon employ sheet metal workers in Shreveport is a ploy to force arbitration. The Court must rely on the representations of attorneys under an ethical obligation to be candid with the Court. Furthermore, Defendant has submitted the sworn statement of its Vice President of Labor Relations James Albano, who states that the reduction of sheet metal workers is due to retirement and that the hiring process is ongoing. (Doc. 10-1 at 4-

5

5). Defendant's position makes it arguable that there is no genuine dispute about whether there is sheet metal work available, which makes it appear that Rule 28 does not apply. This would mean that Article V applies, and as the Court has already stated, this would make Defendant's position that there is no authority for general time checks clearly arguable.

Finally, the overall question of which time check rule should apply is a question of application of the CBA. As each side cites plain language supporting their position, each side has an arguably justified position. However, the plausibility of Plaintiff's position is not relevant, while the plausibility of Defendant's position is crucial in making this an arbitration case, depriving the Court of jurisdiction. For these reasons, Defendant's Motion to Dismiss for a lack of subject matter jurisdiction is GRANTED as to Counts 1 and 3.

**B. At Least One of Defendant's Positions Regarding the Assignment of Sheet Metal Work is Arguably Justified**

In response to Plaintiff's claims about the assignment of sheet metal work to other crafts, Defendant submits three distinct positions which it believes are independently sufficient to show that its position is arguable. First, Defendant argues that Plaintiff has acquiesced to the assignment of sheet metal work to other crafts, and that this situation has created an implied term in their agreement. Next, Defendant argues that Plaintiff's members do not have an exclusive right to sheet metal work, as it has historically been performed by members of other crafts. Defendant contends that this historical state of affairs precludes any craft from having an exclusive claim to work and that this position is supported by prior arbitration awards. Finally, Defendant argues that an "Imposed Agreement" in 1991 alters the Incidental Work Rule such that its right to assign sheet metal work to other crafts is greatly expanded, and that this means that it is at least arguable that it is not in breach of the CBA. Because the Court finds that Defendant's first argument, regarding implied agreements, is arguably justified, it does not reach

6

the second and third arguments, regarding historical exclusivity of work and the 1991 Imposed Agreement.

### 1. Defendant's Position on Plaintiff's Acquiescence to Assignment of Sheet Metal Work to Other Crafts is Arguably Justified

Defendant denies that it has breached any agreement regarding the assignment of sheet metal work. "Past practices rise to the level of an implied agreement when they have 'ripened into an established and recognized custom between the parties.'" *Bhd. Ry. Carmen v. Missouri Pac. R.R. Co.,* 944 F.2d 1422, 1429 (8th Cir. 1991) (quoting *Alton & S. Lodge No. 306 v. Alton & S. Ry.,* 849 F.2d 1111, 1114 (8th Cir. 1988)). Defendant submits the Albano statement as evidence that it has been necessary to assign work Plaintiff regards as sheet metal work to other crafts for many years, and that the union has not objected to this "open and obvious" state of affairs. Ex. 1 at ¶¶ 9-11. Plaintiff disputes that it was aware of this practice and immediately requested the time check when it learned that Defendant had reduced its sheet metal workers to three. Plaintiff's Ex. A at ¶ 11. Furthermore, Plaintiff's Director of Railroad and Shipyard Workers Dewey Garland states that the question of whether this alleged past practice has given rise to an implied agreement is an open question. *Id.* Defendant bears a "light burden" to show that its position is not frivolous of obviously insubstantial. *Bhd. Ry. Carmen*, 944 F.2d at 1429. However, the Eighth Circuit has specifically held that it is arguable that a past practice can give rise to an implied agreement, and Defendant has submitted sworn statements alleging that these past practices have been consistently and notoriously in place. *Id.,* Ex. 1 at ¶¶ 9-11. It is not for the Court to determine at this juncture whether an implied agreement did arise or to make a factual determination about Defendant's assertions that these past practices actually took place. Due to its factual assertions of past practices and the precedent that explicitly allows for the creation of implied agreements through past practices, Defendant's position is arguably justified.

7

Plaintiff argues that in order to show an implied agreement, Defendant must show "not only a pattern of conduct but also some kind of mutual understanding" because "prior behavior by itself…falls short of an 'established practice…'" *United Trans. Union v. St. Paul Union Depot Co.,* 434 F.2d 220, 222-23 (8th Cir. 1970). Plaintiff further argues that its officers were unaware of the reduction in force until recently; thereby contesting that it knew of and acquiesced to the assignment of sheet metal work to other crafts. These are questions of fact for the arbitrator to resolve that do not change the fact that Defendant's position is arguably justified. Defendant's Motion to Dismiss is therefore GRANTED as to Counts 2 and 4.

## Conclusion

Defendant has an arguably justified response to each of Plaintiff's counts. Regarding the time check, Defendant's position that time checks are assignment specific is supported by contractual language, as is Plaintiff's. However, given the light burden defendants must meet and the heavy mandate for arbitration, which side is correct is a question for arbitration. Regarding the assignment of work, Defendant's position that Plaintiff acquiesced to a new implied agreement is arguably justified. Plaintiff's arguments to the contrary are factual questions for the arbitrator to decide. Since Defendant's positions are arguably justified, this is a minor dispute under the RLA. As such, it is subject to mandatory arbitration and this Court does not have subject matter jurisdiction to hear it. Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore GRANTED.

**IT IS SO ORDERED**

Dated: November 9, 2009         /s/ Greg Kays
                                GREG KAYS, JUDGE
                                UNITED STATES DISTRICT COURT